95 F.3d 1153
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Patricia S. SMALLWOOD, Plaintiff/Appellant,
v.
JEFFERSON COUNTY, KENTUCKY, Defendant/Appellee.
 No. 95-5686.
 United States Court of Appeals, Sixth Circuit.
 Aug. 27, 1996.
 
 Before: BOGGS and MOORE, Circuit Judges, and HILLMAN, District Judge.*
 PER CURIAM.
 
 
 1
 Appellant Patricia Smallwood is a former employee of Jefferson County, Kentucky. Smallwood brought suit against Jefferson County alleging sex discrimination in employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Equal Pay Act, 29 U.S.C. § 206(d), together with deprivation of her due process rights in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983.
 
 
 2
 The district court granted summary judgment on plaintiff's 42 U.S.C. § 1983 claim. The court also denied plaintiff's request for preliminary injunctive relief in the form of reinstatement during the course of the proceedings. Plaintiff's remaining Title VII and Equal Pay Act claims proceeded for factfinding before a magistrate judge serving as special master. The district court adopted the findings of the magistrate judge and granted judgment for defendant on plaintiff's claims. Appellant timely appealed.
 
 
 3
 For the reasons set forth below, we affirm.
 
 I. FACTS
 
 4
 Patricia Smallwood began her employment with the Jefferson County Office of Personnel Management in August 1986 as a Personnel Analyst I for the Examination Division, which was responsible for developing, administering and scoring employment examinations for Jefferson County government. Effective October 6, 1986, Smallwood was promoted to Personnel Analyst II. At all times relevant to this appeal, appellant's direct supervisor was the Manager of Examinations, Clarence Weathers. Weathers' superior was the Director of Personnel for the county, Gwen Nelson.
 
 
 5
 In May 1987, a male personnel analyst was hired at a higher entry level salary than Smallwood had received. Smallwood alleges that, also beginning in May 1987, Weathers assigned her job duties in a discriminatory fashion on the basis of her sex. Specifically, she complains that Weathers reassigned many of her more challenging tasks, such as writing questions for promotion examinations, to the less experienced male co-worker. In contrast, Weathers assigned appellant clerical functions and making coffee for examinees. This reassignment undisputedly occurred after Smallwood got into an argument with Weathers concerning late hours, during which Smallwood accused Weathers of inefficiency and lack of consideration for others.
 
 
 6
 In June 1987, Smallwood filed a complaint with the Kentucky Commission on Human Rights (KCHR) and the Equal Employment Opportunity Commission (EEOC), alleging discrimination in job assignments on the basis of sex. On December 1, 1987, Smallwood dismissed these charges, explaining that her work situation had improved and that she was aware that she could refile charges should new problems arise.
 
 
 7
 On December 24, 1987, Smallwood refiled with the EEOC. At that time, she asserted that she was being excluded from competing for the position of Management Analyst II in the Department of Public Health. That posted position required three years of supervisory experience. Appellant claimed that the requirement had a disparate impact on women.
 
 
 8
 While this second EEOC complaint was pending, Smallwood made copies of confidential applications for the Management Analyst II position, together with test scores and rating systems. This activity was in violation of a confidentiality agreement she had signed. She passed this information on to her attorney. As an attachment to a demand letter to the county judge/executive, Smallwood's attorney disclosed this statistical and application information. When her superiors became aware that Smallwood had copied confidential information and had released it to her attorney, she was suspended on April 19, 1988.
 
 
 9
 On April 28, 1988, after an investigation, Smallwood was terminated by Director Nelson, pending final approval by the county judge/executive. Appellant requested an administrative review of this decision. On June 16, 1988, the Personnel Review Committee reviewed the discharge and found a serious violation of the confidentiality policy, but recommended disciplinary action other than termination. The director appealed the review committee's recommendation. On June 20, 1988, the county judge/executive reversed the review committee's recommendation and approved Smallwood's dismissal.
 
 
 10
 Plaintiff filed suit.
 
 II. DISCUSSION
 A. Title VII and Equal Pay Act Claims
 
 11
 On appeal, Smallwood contends that the district court improperly granted judgment to defendant on her Title VII and Equal Pay Act claims. Specifically, she challenges certain factual findings made by the special master and adopted by the district court.
 
 
 12
 We review the factual determinations of the trial court only for clear error. Fed.R.Civ.P. 52(a). A finding is clearly erroneous " 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).
 
 
 13
 To prevail on a claim of sex discrimination in the absence of direct evidence of discriminatory motive, plaintiff bears the burden of proof at all times. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 2749 (1993). Plaintiff satisfies her obligation by producing evidence according to the following pattern:
 
 
 14
 First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.
 
 
 15
 Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981) (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).
 
 
 16
 In the instant case, the district court concluded that plaintiff had proved a prima facie case of discrimination in Weathers' reassignment of job duties to her male counterpart. The district court held, however, that defendant had articulated a legitimate, nondiscriminatory reason for Weathers' conduct and that Smallwood had failed to prove that defendant's proffered reason was pretextual. Appellant contends that the district court erred by accepting defendant's proffered reason for Weathers' disparate treatment of plaintiff and her male counterpart.
 
 
 17
 The district court's finding is adequately supported by the record. Smallwood admits that she got into an argument with Weathers concerning his management style. Her own pleadings acknowledge that her job tasks were reassigned only after that argument. The district court's conclusion that personality conflict, not gender discrimination, was the basis for Weather's action is amply supported by the evidence.
 
 
 18
 Smallwood also claims that the district court erred when it found that she had not proven that she was discharged in retaliation for making civil rights complaints. Again, the court concluded that, although plaintiff had set forth a prima facie case of disparate treatment, the county had articulated a legitimate, nondiscriminatory reason for its action which plaintiff had failed to prove was pretextual.
 
 
 19
 Appellant does not dispute that she copied and released confidential documents to her attorney. She contends only that this conduct was not a willful violation of the confidentiality policy. The district court, however, was entitled on the record before it to conclude that Smallwood's conduct in copying the records was reasonably viewed by the county as a breach of the confidentiality policy and that her conduct was the reason for the county's decision to discharge her. We find no error.
 
 
 20
 Appellant next claims that the district court erred in finding that the county had demonstrated a legitimate business reason for a difference in starting pay between the male personnel analyst and similarly situated female personnel analysts. We disagree.
 
 
 21
 Analysis of appellant's claim of unequal pay is identical under both the Equal Pay Act and Title VII. County of Washington v. Gunther, 452 U.S. 161, 168 (1981) (concluding that last sentence of § 703(h) of Title VII was designed to incorporate the affirmative defenses of the Equal Pay Act into Title VII wage discrimination claims); E.E.O.C. v. J.C. Penney Co., Inc., 843 F.2d 249, 252 (6th Cir.1988) (same). Once a plaintiff has proved a prima facie case that the employer paid males and females different wages for equal work on jobs, the burden is on the employer to prove that the pay difference is justified under one of the four affirmative defenses under § 206(d)(1) of the Equal Pay Act. Corning Glass Works v. Brennan, 417 U.S. 188, 196 (1974).
 
 
 22
 To establish an exception under § 206(d)(1), the employer must prove that the pay difference is based on one of the following reasons: (1) a bona fide seniority system; (2) a merit system; (3) a system that compensates based on the quantity or quality of production; or (4) any other factor other than sex. See 29 U.S.C. § 206(d)(1) (1978). In order to prove that the difference is due to a "factor other than sex," an employer must demonstrate that the disparity is not based on sex, but on a legitimate business reason. J.C. Penney, 843 F.2d at 253.
 
 
 23
 Here, the county provided evidence in the form of testimony, market conditions and candidate credentials to support its position that, at the time the male analyst was hired, the salary difference was necessary to attract a particularly well-qualified candidate. The district court considered the facts in light of the correct legal standards under both the Equal Pay Act and Title VII. As the court noted, the desire to hire a more qualified applicant may constitute a legitimate business reason for a pay differential. Henry v. Lennox Indus., Inc., 768 F.2d 746, 751 (6th Cir.1985). Moreover, even if the employer misjudged the candidate's qualifications, a good faith business decision to pay a higher salary is protected under the acts. Id. While the district court was not required to believe the county's proffered reason for paying the male employee more, the court was entitled to do so.
 
 
 24
 The district court's factual determinations on appellant's Title VII and Equal Pay Act claims are affirmed.
 
 B. 42 U.S.C. § 1983 Claims
 
 25
 Appellant complains that the district court erred by granting defendant's motion for partial summary judgment on appellant's claims that her discharge deprived her of both her property and liberty interests without due process. We review the district court's grant of summary judgment de novo. Harrow Prods., Inc. v. Liberty Mut. Ins. Co., 64 F.3d 1015, 1019 (6th Cir.1995). Summary judgment is proper if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). See Harrow, 64 F.3d at 1019.
 
 
 26
 In the instant case, the district court concluded that, under Board of Regents v. Roth, 408 U.S. 564 (1972), plaintiff had a property interest in her position with Jefferson County. The court determined, however, that appellant had received all of the process to which she was constitutionally entitled under Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1984). On appeal, appellant contends that the district court erred because the process she was afforded did not meet the precise requirements of state law.
 
 
 27
 As the district court held, when a governmental employee is found to have a property interest in the continuation of her employment, the Due Process Clause of the Fourteenth Amendment forbids discharge unless the employee is afforded a pre-termination hearing. Roth, 408 U.S. at 576-77. To meet the constitutional minimum, the government must supply "some kind of hearing" prior to the employee's discharge. Id. at 542. Where post-termination procedures are available, the pre-termination hearing must provide an opportunity for the employee to present her side of the case to the decisionmaker before the termination takes effect. Id. The employee, however, is not entitled to a full adversarial hearing before an impartial decisionmaker. Purisch v. Tennessee Technological Univ., 76 F.3d 1414, 1424 (6th Cir.1996); Cremeans v. City of Roseville, 861 F.2d 878, 882-83 (6th Cir.1988), cert. denied, 490 U.S. 1066 (1989); Duschesne v. Williams, 849 F.2d 1004, 1007-08 (6th Cir.1988) (en banc), cert. denied, 489 U.S. 1081 (1989). Instead, the employee is entitled only to notice and an opportunity to contest the charges against her before the responsible decisionmaker. Id.
 
 
 28
 Here, Smallwood was suspended on April 19, 1988, after Director Nelson became aware that she had copied confidential documents and released them to her attorney. Nelson advised Smallwood that she was being suspended pending an investigation of her breach of the confidentiality policy. Following investigation, on April 28, Nelson advised Smallwood that she was being terminated for violation of the policy, to become final on approval by the Jefferson County Fiscal Court.
 
 
 29
 On May 4, Smallwood notified Nelson that she intended to appeal. On May 10, 1988, the Jefferson County Fiscal Court approved the dismissal as part of routine approval of 50 recommended personnel actions. Nelson testified that she had privately discussed the action with each of the three Fiscal Court members prior to the vote being taken.
 
 
 30
 On June 10, 1988, the Personnel Review Committee of Jefferson County held a hearing on Smallwood's dismissal. On June 14, the committee recommended that the dismissal be overturned and a less severe disciplinary action be taken. On June 16, Director Nelson appealed the committee's decision to county judge/executive Sloane. Judge Sloane subsequently rejected the decision of the Personnel Review Committee and on June 20, 1988, reaffirmed Smallwood's dismissal.
 
 
 31
 There is no dispute that appellant had the opportunity to present her case both to Director Nelson prior to her suspension and again to the review board before termination became final. Nor is there any doubt that Smallwood exercised these opportunities, presenting her case both in person and by document.
 
 
 32
 Smallwood contends, however, that the first meeting with the director was not adequate under Loudermill because the director was not the decisionmaker for terminations in Jefferson County. Smallwood contends that under state law, only the county judge/executive had the authority to make final firing determinations. Therefore, she asserts that an opportunity to present her case to Nelson did not satisfy the constitutional minimum. Smallwood also argues that the appeal procedure to the review committee was not sufficient because it occurred after her termination.
 
 
 33
 Neither proposition has merit. First, the adequacy of due process procedures is determined by the United States Constitution, not by state law. Loudermill, 470 U.S. at 541; Purisch, 76 F.3d at 1423; Cremeans, 861 F.2d at 882. Therefore, whether or not the state adequately fulfilled its own requirements is irrelevant to whether Smallwood received constitutionally sufficient process.
 
 
 34
 Second, it cannot reasonably be disputed that the director was the person responsible for making the initial determination on appellant's discharge, and the district court so found. The first decision by either Director Nelson or the county judge/executive to terminate plaintiff's employment occurred after plaintiff's first opportunity to present her case to Director Nelson.
 
 
 35
 Moreover, because of the availability of appeal procedures, plaintiff's discharge did not become completely final under state law until the county judge/executive's action in June. In the meantime, plaintiff received two hearings, either of which was adequate under the Constitution. One was conducted before a preliminary determination was made regarding discharge. The other was conducted prior to final determination. Whether the hearing before the review committee is considered to be pre- or post-termination, the existence of that review is relevant to the constitutional adequacy of the county's procedures. Loudermill, 470 U.S. 545-47 (premising adequacy of pre-termination hearing on existence of post-termination procedures). Without question, the two hearings, taken together, were adequate protection of her due process rights.
 
 
 36
 Summary judgment on the § 1983 claim was properly granted by the district court.
 
 C. Preliminary Injunction
 
 37
 Appellant's final claim of error is that the district court improperly denied her motion for reinstatement at the outset of the litigation, pending resolution of her civil rights claims. The district court properly considered plaintiff's request to be a motion for a preliminary injunction.
 
 
 38
 On appeal, a district court's decision to grant or deny a preliminary injunction is reviewed for abuse of discretion. First Technology Safety Sys., Inc. v. Depinet, 11 F.3d 641, 647 (6th Cir.1993). A court abuses its discretion when it applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact. Id.
 
 
 39
 Here, the district court found that appellant had failed to demonstrate the irreparable harm necessary to support a preliminary injunction. Instead, the district court concluded that her motion for reinstatement was capable of being compensated by back pay, should she prevail on her claim. See Sampson v. Murray, 415 U.S. 61, 88-92 (1974) (holding that a discharged employee's loss of income and embarrassment are not sufficient to demonstrate irreparable harm).
 
 
 40
 The district court's determination unquestionably was correct. Id. Moreover, the question is now moot in light of this court's affirmance of the district court's disposition of appellant's claims.
 
 
 
 *
 The Honorable Dougals W. Hillman, United States District Judge for the Western District of Michigan, sitting by designation