Janet BRUNE, et al.   Plaintiffs,

v.

**BASF CORPORATION Defendant.**

No.  C–1–97–811.

United States District Court,
S.D. Ohio,
Western Division.

Jan. 15, 1999.

Randolph Harry Freking, Freking & Betz, Cincinnati, OH, Carrie Atkins Barron, Freking & Betz, Cincinnati, OH, for plaintiffs.

Rosemary Doreen Canton, Taft, Stettinius & Hollister, Cincinnati, OH, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

DLOTT, District Judge.

This matter is before the Court on Defendant's Motion for Summary Judgment (doc. # 11), pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs Janet Brune and Deanna Ashing filed this suit against their former employer, Defendant BASF Corporation, following their terminations. In their Second Amended Complaint (doc. # 8), Plaintiffs raise the following claims against BASF: (1) age discrimination under federal and Ohio law, (2) gender discrimination under federal and Ohio law, (3) disability discrimination under federal and Ohio law (Brune only), (4) wage discrimination under federal and Ohio law, (5) promissory estoppel, (6) breach of contract, (7) public policy tort, and (8) breach of the covenant of good faith and fair dealing. BASF has

moved for Summary Judgment as to all claims. For the reasons that follow, Defendant BASF's Motion for Summary Judgment is hereby **GRANTED.**

## I. FACTS

Plaintiff Janet Brune, age fifty-one years at the time of her termination, was a BASF employee from October 1962 to March 1996. She began working in the Billing Department and was promoted throughout her tenure at BASF, ending at the position of Human Resources Assistant at the Milford facility. She was the only human resources employee on-site at the Milford facility from 1991 to her termination. Brune was badly injured in an explosion at the BASF Dana Avenue plant in July 1990 and she went on medical leave until April 1991. Brune continued to walk with a limp when she returned to work and she was limited in the amount of time she could spend standing, sitting, or walking.

Plaintiff Deanna Ashing, age 57 at the time of her termination, was a BASF employee from 1981 to 1996. Ashing was employed as a Chemist, and then a Senior Chemist, in the Polymer Development Department. During her employment with BASF, Ashing was elected Chairman of the Cincinnati section of the American Chemical Society and she was awarded a patent for Epoxy Phosphate.

BASF began experiencing financial difficulties in the Container Coatings Division of BASF, the division in which Plaintiffs were employed, in the 1990s. The Milford facility shrank in size from approximately 200 employees in 1990 to approximately 60 or 70 employees by 1995. In March 1996, BASF terminated nine employees, including Brune and Ashing, as part of a reduction in force ("RIF") and restructuring. The parties disagree over the reasons for the termination of the Plaintiffs, an issue which will be expanded upon in the discussions below.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT MOTIONS

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party may support the motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which nonmoving party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On those issues for which it shoulders the burden of proof, the moving party must make a showing that is " 'sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.' " *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir.1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact,* 99 F.R.D. 465, 487–88 (1984)) (emphasis omitted). For those issues where the moving party will *not* have the burden of proof at trial, the movant must "point[ ]out to the district court ... that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548.

In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The nonmoving party "must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e). If the defendant moves for summary judgment based on the lack of proof of a material fact, "[t]he mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient" to overcome the summary judgment motion. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. Thus, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (citations omitted).

## III. ANALYSIS

### A. Plaintiffs' Unsupported Claims

BASF moved for Summary Judgment on all counts for both Plaintiffs. Neither Brune nor Ashing opposed BASF's Motion regarding their claims of (1) breach of contract, (2) promissory estoppel, (3) breach of the covenant of good faith and fair dealing, and Brune did not oppose the Motion regarding her claims of wage discrimination under federal and Ohio law. As stated above, Plaintiffs, as the nonmoving parties, cannot rest on the pleadings but must put forth affirmative evidence to defeat BASF's Motion for Summary Judgment. *See Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. Plaintiffs have not met their burden and therefore, as to these claims BASF's Motion for Summary Judgment is hereby granted.

### B. Plaintiffs' Sex Discrimination Claims

Both Plaintiffs allege, in part, that they were discharged because of their gender. Title VII, 42 U.S.C. § 2000e et seq., and the Ohio Fair Employment Practices Act, Ohio Rev.Code § 4112.02(A), make it unlawful for an employer to terminate an employee on the basis of race, color, sex, religion, or national origin.[1] Claims under Ohio Revised Code Chapter 4112 can be analyzed under Title VII case law. *Plumbers & Steamfitters Joint Apprenticeship Committee v. OCRC*, 66 Ohio St.2d 192, 196, 421 N.E.2d 128 (1981).

Under the framework for deciding Title VII employment discrimination cases set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a plaintiff establishes a prima facie case by proving several elements of his or her claim. Generally, to establish a prima facie case of sex discrimination a plaintiff must produce evidence sufficient to prove the following elements: (1) that she is a member of a protected class; (2) that an adverse employment action was taken against her; (3) that she was qualified for the position; and (4) that a comparable non-protected person was treated better. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582–83 (6th Cir.1992). The standard fourth factor, however, is not appropriate in RIF cases where the most common legitimate reason for the terminations is the workforce reduction. *See Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir.1990). In RIF cases the fourth factor of the prima facie burden is "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *See id.*

Once a plaintiff has established a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action taken against the plaintiff. *See Kocsis v. Multi–Care Management, Inc.*, 97 F.3d 876, 883 (6th Cir.1996) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817). If the defendant carries the burden of production by articulating a legitimate, nondiscriminatory reason, the plaintiff must then prove by a preponderance of the evidence that the defen-

---

1. The Ohio statute also makes it unlawful to discriminate on the basis of handicap or ancestry. Ohio Rev.Code § 4112.02.

dant's proffered reasons were not its true reasons, but were merely pretext for illegal discrimination. *Kocsis,* 97 F.3d at 883 (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

To raise a genuine issue of material fact on the pretext issue and thus defeat a motion for summary judgment, a plaintiff must show, again by a preponderance of the evidence, that one of three factors is present: (1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the action; or (3) that the proffered reasons were insufficient to motivate the action. *See Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1084 (6th Cir.1994) (citation omitted). As for the first and third methods, if a plaintiff can prove that "the defendant's proffered reasons either have no basis in fact or are insufficient to motivate discharge, a permissive inference of discrimination arises." *Kline v. Tennessee Valley Auth.,* 128 F.3d 337, 346 (6th Cir.1997). A plaintiff using the second method of rebuttal "may not simply rely upon his prima facie evidence but must, instead, introduce additional evidence of [sex] discrimination." *See Manzer,* 29 F.3d at 1084 (discussing age discrimination). The plaintiff bears the ultimate burden of persuading the trier of fact that illegal discrimination took place. *See Kocsis,* 97 F.3d at 883 (citing *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089).

### 1. Plaintiff Brune

■ Plaintiff cannot meet her prima facie burden because even though she is a member of the protected class, was terminated as part of the RIF, and was quali-

fied for the position of Human Resources Assistant, she cannot produce additional credible evidence that BASF singled her out for termination based on her gender. *See Barnes,* 896 F.2d at 1465 (setting forth the prima facie burden in RIF cases). In her discovery responses, Brune asserts that she was qualified to do the work of Rob Jansen,[2] a sales representative who was not terminated. Even if Brune was qualified for Jansen's job, BASF's decision not to transfer Brune to another position or displace a worker in a non-protected class is not evidence of discrimination. *See id.* at 1469 (stating that there is no duty to transfer employees or displace workers with less seniority when an employee's position is eliminated in a RIF); *Sovacool v. General Tire, Inc.,* No. 94–4235, 108 F.3d 1377, 1997 WL 94690, at *4 (6th Cir. March 4, 1997) (same).[3]

■ Brune's attempt to establish her sex discrimination claim with statistical evidence is similarly unavailing. The first piece of statistical evidence Brune points to is that of the four administrative positions BASF examined to make RIF terminations, the two positions chosen were occupied by women. This does not prove discrimination. Although statistical evidence is a recognized way to establish a prima facie case of discrimination, a four person sample is statistically unreliable. *See Simpson v. Midland–Ross Corp.,* 823 F.2d 937, 943 (6th Cir.1987) (stating that reliance on statistical pool of seventeen people is suspect); *see also Carter v. NKC of America,* 85 F.3d 628, No. 95–5948, 1996 WL 224065, at *1 (6th Cir. May 2, 1996) (eighteen person pool); *Osborne v. Brandeis Machinery and Supply Corp.,* 27 F.3d 567, No. 93–5497, 1994 WL 264245, at *3 (6th Cir. May 26, 1994) (eight person pool).

2. Plaintiff Brune also asserts that she was qualified to the do the jobs of several female employees, but those assertions are not relevant to her claims of discrimination based on gender.

3. Brune makes the indirect argument that she was not terminated pursuant to a RIF because she was allegedly replaced by Angela

Maly, a secretary. As is discussed *infra* in Section III.C.1 regarding Brune's age discrimination claim, an employee is not terminated pursuant to a RIF if she is replaced after her termination. *See Barnes,* 896 F.2d at 1465. The Court concludes, however, that Maly did not replace Brune and Brune was in fact terminated pursuant to a RIF.

Plaintiffs' proffered "macro" statistical evidence, that 67% of the total employees terminated (six of nine) in this RIF were female is similarly unreliable.[4]

Even assuming the Court found the small statistical pool to be probative, the evidence still does not give rise to an inference of discrimination. To establish discriminatory intent with this statistical evidence, and in the absence of other direct or circumstantial evidence of discrimination, the statistical evidence must show significant disparity and eliminate the most common nondiscriminatory explanations for the disparity. *See Barnes,* 896 F.2d at 1466.

Plaintiffs' evidence does not meet this burden. In examining why specific employees were terminated in different BASF positions, no pattern of sex discrimination emerges. Rather, the evidence demonstrates that BASF first determined if particular job positions were not essential and thus could be eliminated, then if forced to choose between employees performing jobs of equal importance, BASF looked at performance. If there was no significant distinction in performance, at seniority. With Brune, the analysis did not proceed beyond the first step. Management decided that a full-time human resources position was not needed and therefore, Brune was terminated. The overall "macro" RIF termination statistics do not eliminate these legitimate nondiscriminatory reasons for the disparity.

In summary, Brune has failed to establish a prima facie case of sex discrimination. Brune has presented no probative direct, circumstantial, or statistical evidence that gender was the basis for her termination pursuant to the RIF at the Milford facility. The evidence shows that BASF eliminated Brune's human resources position and the company had no legal duty to transfer her and displace another worker.

## 2. Plaintiff Ashing

■ Similar to Plaintiff Brune, Plaintiff Ashing has established the first three elements of her prima facie burden, but she also fails to present additional direct, circumstantial, or statistical evidence that BASF terminated her based on her sex. First, Ashing offers the "macro" level statistical evidence the Court has already found not to be reliable. Ashing further offers statistical evidence broken down for the category of Chemists III, a group to which Ashing belonged. In the Chemist III category, two of five females were terminated, but all five males were retained. Again this small statistical pool of ten people does not provide reliable evidence of discrimination. *See Simpson,* 823 F.2d at 943; *see also Carter,* 1996 WL 224065, at *1; *Osborne,* 1994 WL 264245, at *3.

■ Moreover, contrary to Plaintiffs' assertions, the method used by BASF in choosing Ashing for termination over her male colleagues is not evidence of discrimination. BASF Vice President, Jack Bianco, instructed several managers and directors at BASF to make recommendations for whom to terminate. Youssef Moussa, supervisor of the chemists, made the recommendation to terminate Ashing based on his personal knowledge of her capabilities and previous performance. Ashing asserts that the entire evaluation and termination process was a discriminatory "sham." Ashing implies that discriminatory intent can be found in the fact that BASF did not have an estab-

4. In presenting its evidence, Plaintiff argues that the statistics demonstrate discrimination under the so-called "four-fifths (⅘) rule". Under the EEOC guidelines, "[a] selection rate for any race, sex, or ethnic group which is less that four-fifths (⅘) (or eighty percent) of the rate for the group with the highest rate will be regarded … as evidence of discrimi-
nation." 29 C.F.R. § 1607.4(D). Plaintiff's argument has little force in light of the small statistical pools evaluated. For example, in the overall termination pool, if only one more man was terminated—making the totals five men and four women—then there would be no adverse impact under the EEOC guidelines.

lished corporate policy in place for executing RIFs. Further, Ashing states that BASF's failure to consult with its national director of human resources before executing the RIF is evidence of discrimination.

These complaints against BASF's procedures do not amount to evidence of discrimination. In analyzing a discrimination claim, the Court is not looking to pass judgment on the soundness of an employer's business decisions. *See McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (1990). Rather, the Court is looking for evidence of discrimination. The Court will not establish rules telling an employer how to conduct a RIF or mandating whom the employer needs to consult before executing a RIF. There is nothing inherently suspect or discriminatory in using managerial discretion to make termination decisions in a RIF.

Turning to the decision to terminate Ashing specifically, the Court does not find evidence of discrimination. Ashing contends that it was discriminatory to base her termination on a performance comparison of the "Chemists in the Product Development Group," when the "Group Leaders in the Product Development Group" were distinguished according to years of service. If the decision to terminate a Chemist were based strictly on years of service, Ashing maintains that she would have kept her job. The Court has reviewed the evidence provided by Ashing and it disagrees with her analysis of BASF's reasoning. In the Group Leaders category, the terminated employee had equal performance ratings but significantly less seniority than one retained employee, and one year less seniority and lower performance ratings than the other retained employee. There is simply no credible evidence that BASF varied its RIF decision making process in order to terminate Ashing based on her sex.

Further, the evidence does not reveal that Ashing was so clearly more qualified than male employees who were retained so as to constitute evidence of discrimination. Ashing objects to receiving lower overall scores in her yearly evaluations even though her scores for individual performance categories remained constant. She argues that male employees did not receive lower overall scores in similar circumstances. This evidence is irrelevant in light of the uncontradicted evidence that Moussa did not review yearly evaluation records in choosing which chemist to recommend for termination.[5] Rather his uncontradicted testimony is that he based his recommendations on his personal knowledge of the chemists' abilities and performance. While this may not be the fairest way to make decisions, the Court cannot say it is a discriminatory means. *See id.*

Plaintiff Ashing has failed to meet her burden of providing "evidence [that is] sufficiently probative to allow a fact finder to believe that the employer intentionally discriminated against [her] because of her sex." *Barnes*, 896 F.2d at 1466.

### 3. Conclusion on the Sex Discrimination Claims

Neither Brune nor Ashing have established a prima facie case of sex discrimination. Therefore, BASF's Motion for Summary Judgment as to Plaintiffs' claims of sex discrimination under 42 U.S.C. § 2000e, et seq. and Ohio Rev.Code § 4112.02(A), and in violation of Ohio public policy is hereby **GRANTED.**

### C. Plaintiffs' Age Discrimination Claims

Both Plaintiffs' also allege, in part, that they were terminated because of their age. The Age Discrimination in Employment

---

**5.** BASF argues that there is a nondiscriminatory reason for Ashing's falling overall scores. Moussa expected Ashing to improve in certain areas from one year to the next. When she did not meet these raised expectations, her overall scores reflected Moussa's disappointment.

Act ("ADEA"), 29 U.S.C. § 621, et seq., and the Ohio Fair Employment Practices Act, Ohio Rev.Code § 4112.02(N) make it unlawful for an employer to discriminate against an employee on the basis of her age. The proof scheme under these Acts is analogous to those under Title VII and the Court will also analyze them using the *McDonnell Douglas* and *Barnes* framework.

### 1. Plaintiff Brune

■ To the extent that Brune's additional direct, circumstantial, and statistical evidence of age discrimination is identical to her proof of sex discrimination, the Court again finds that the evidence is insufficient to meet her prima facie burden. Moreover, the Court finds that Brune's additional evidence of age discrimination is insufficient to meet her burden. Brune's claim of age discrimination is based primarily on the fact that Angela Maly, a secretary at BASF who is ten years younger than Brune, assumed many of Brune's human resources responsibilities after Brune was terminated. Essentially, Brune argues that she was "replaced" by Maly, and if she was replaced by a younger worker than she has met her prima facie burden of age discrimination under the general *McDonnell Douglas* framework.[6] The special *Barnes* fourth prong—additional direct, circumstantial, or statistical evidence of discrimination—is needed only in RIF cases. 896 F.2d at 1465. However, "[a]n employee is not eliminated as part of a work force reduction [RIF] when he or she is replaced after his or her discharge." *Id.*

After reviewing evidence in a light most favorable to Brune, the nonmoving party, the Court concludes that Maly did not replace Brune. In a RIF, a terminated employee is not replaced when "another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work." *Barnes*, 896 F.2d at 1465. The evidence shows that BASF managers made the decision to eliminate the Human Resources Assistant position as part of the Milford facility RIF. Brune had been the only human resources employee on-site since 1991. However, her human resources responsibilities had been dwindling as the Milford work population shrank from almost two hundred employees in 1990 to only sixty or seventy employees in 1995. After Brune's termination, her former responsibilities were divided between Maly, and Robert Merten, Brune's supervisor and the Human Resources Director working in Michigan. This division of responsibilities does not mean that BASF retained the Human Resource Assistant position at Milford.

In support of her argument that Maly replaced Brune, Brune offers the affidavit of Judith Caliguri, a former employee of BASF. Caliguri states that she saw Maly walk between her own desk and the human resources office several times a day.[7] Maly, stated in a deposition, however, that performing the human resources duties took only four hours per week. She did the human resources duties in addition to her regular secretarial duties. Moreover, Maly did not assume all of Brune's responsibilities. For example, other administrators assumed the recruiting activities, developed onsite EEO policies, coordinated training, and maintained safety records. The Court finds that reasonable jurors could not conclude that Maly replaced Brune.

---

**6.** The Court already found in Section II.B.2 that Ashing satisfied the first three prongs of the *McDonnell Douglas* test and being replaced by a younger worker would satisfy the fourth prong. *See* 411 U.S. at 802, 93 S.Ct. 1817.

**7.** The paragraph in Caliguri's affidavit relating to what Maly allegedly "stated" to Caliguri regarding her assumption of Brune's duties is inadmissable hearsay and cannot be considered as evidence at the summary judgment stage. *See* 10A Charles A. Wright, Arthur R.

■ Finally, BASF had no legal responsibility as part of its RIF to consider allowing Brune, a Human Resources Assistant, to displace Maly and assume her secretarial duties. *See Barnes*, 896 F.2d at 1469 (stating that there is no duty to transfer employees or displace workers with less seniority when an employee's position is eliminated in a RIF); *Sovacool v. General Tire, Inc.*, 108 F.3d 1377, No. 95–4235, at *4 (6th Cir. March 4, 1997) (same).

## 2. Plaintiff Ashing

To the extent that Plaintiff Ashing relies on the same evidence proffered for her sex discrimination claims, she cannot support her claims for age discrimination. For the reasons discussed above, the Court specifically does not accept Ashing's arguments that BASF's unstructured RIF process and Moussa's evaluations of the chemists raise an inference of discrimination. Nor does Ashing put forth other sufficient evidence to support a prima facie case of age discrimination Her statistical evidence of age discrimination based on the pools of "All Chemists" (16 people) and its subsection, "Chemists III" (10 people) is statistically suspect. *See Simpson*, 823 F.2d at 943; *see also Carter*, 1996 WL 224065, at *1; *Osborne*, 1994 WL 264245, at *3. Moreover, the statistics do not eliminate BASF's non-discriminatory explanations for its decisions. *See Barnes*, 896 F.2d at 1466.

Finally, the Court does not consider the notes handwritten on the Polymer Lab organizational chart dated January 12, 1996 as evidence of discriminatory intent. The handwritten notes indicate that Ashing was the "oldest and longest service"

chemist working under Moussa and that BASF was "retaining a lower level person with one year service." Ashing argues that these handwritten notes are evidence that BASF knew it was discriminating against Ashing because of her age when it made the decision to terminate her. The Court cannot make that logical leap. Nothing on the Polymer Lab organizational chart indicates when handwritten notes were written or by whom.[8] Regardless, the handwritten notes merely state facts. They do not insinuate in any way that Ashing was a less qualified chemist because of her age. Nor do they insinuate that Ashing was terminated because of her age. In the Court's view, the handwritten notes only indicate awareness of the potential risk an employer faces whenever it terminates an employee over forty years of age. *See Bashara v. Black Hills Corp.*, 26 F.3d 820, 824 (8th Cir.1994).

## 3. Conclusion on the Age Discrimination Claims

Neither Plaintiff has satisfied her burden of proving a prima facie case of age discrimination. Therefore, the Defendant's Motion for Summary Judgment as to the age discrimination claims under 29 U.S.C. § 621 et seq. and Ohio Rev.Code § 4112.02(N), and in violation of Ohio public policy are hereby **GRANTED**.

## D. Plaintiff Brune's Disability Discrimination Claims

■ Plaintiff Brune cannot establish a prima facie case of disability discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., or the Ohio Fair Employment Practices Act, Ohio Rev.Code § 4112.02(A).[9] To prove a claim for dis-

---

Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 2721 at 40 (1983).

**8.** In its Reply (doc. # 15), BASF contends that the notes on the organizational chart were written by Elizabeth Roman, the EEO manager for BASF, after the termination decisions were made. The District Court cannot consider this or any other statements made in counsels' briefs regarding Roman's activities because neither Plaintiffs nor Defendant sub-

mitted Roman's deposition into evidence. Counsels' unsupported statements made in the briefs are not in and of themselves evidence. *See* 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2723 at 64 (1983).

**9.** The substantive law for disability discrimination claims is essentially the same under the ADA and the Ohio statute. *See Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173,

ability discrimination, Brune must establish a genuine issue of material fact as to the following elements: (1) she is handicapped/disabled; (2) she can perform the essential functions of her position with or without reasonable accommodation; (3) action was taken by the Defendant's because of her handicap/disability; (4) employer knew or had reason to know of her disability; and (5) direct, circumstantial, or statistical evidence indicates that she was terminated because of her disability. *See Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir.1996) (defining the general prima facie case); *Barnes*, 896 F.2d at 1465 (substituting the special fifth prong for RIF cases).

BASF denies both that Brune is "disabled" under the ADA and Ohio statutes and that she was terminated because of her condition. "Disability" is defined in the ADA as follows:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). "Major life activities" include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I); *see also* Ohio Rev.Code § 4112.01(A)(13).

Brune alleges that her limp, caused in an explosion at the BASF Dana Avenue plant, is a disability affecting her major life activities of walking, sitting, and standing. BASF argues that a residual limp is not a cognizable disability. *See e.g., Kelly v. Drexel Univ.*, 94 F.3d 102, 108 (3d Cir.

1996) (holding that a limp was not a disability when it did not "substantially limit" the plaintiff's ability to walk); *Taylor v. Pathmark Stores*, No. 96–337–JJF, 1997 WL 873547 at *4 (D.Del. Oct.23, 1997) (same); *Banks v. Hit or Miss, Inc.*, 996 F.Supp. 802, 807 (N.D.Ill.1998) (holding that a limp did not constitute a disability when the plaintiff appeared to be able to accomplish everyday tasks).

The Court need not conduct a detailed factual inquiry regarding whether Brune's limp constituted a disability, because even if it does, Brune has not produced probative evidence that BASF terminated her because of her disability. To the contrary, common sense dictates that if BASF wanted to terminate Brune because of her disability it would not have waited five years to do so. Brune's only evidence regarding this claim is the circumstantial evidence which she produced in order to establish the sex and age discrimination claims. Once again she is arguing that she should have been transferred when her position as Human Resources Assistant was eliminated, or that she was replaced after her termination by a non-disabled employee. This Court responds, once again, that her arguments are factually and legally unpersuasive.

Therefore, the Defendant's Motion for Summary Judgment on the disability claims is hereby **GRANTED**.

### E. Plaintiff Ashing's Wage Discrimination Claims

Plaintiff Ashing's claims under the Equal Pay Act, 29 U.S.C. § 206(d), and Ohio's Fair Employment Practices Act, Ohio Rev.Code § 4112.02(A) are unavailing.[10] Ashing contends that she was paid

1177 (6th Cir.1996) ("The analysis of claims under the Americans with Disabilities Act roughly parallels those brought under the Rehabilitation Act of 1973."); *Wooten v. City of Columbus*, 91 Ohio App.3d 326, 336, 632 N.E.2d 605 (1993) (stating that the ADA and the Rehabilitation Act are the minimum standards for protection under Chapter 4112).

Therefore, the Court will address these claims together.

10. The Court will analyze both the federal and the state claims under the same standard. "[F]ederal case law interpreting Title VII ... is generally applicable to cases involving alleged violations of R.C. Chapter 4112."

a wage lower than that of Mike Miller, another Polymer Chemist at BASF. The EPA prohibits employers from paying unequal salaries on the basis of gender to employees who perform equal work. To establish a prima facie case under the EPA, Ashing must establish that BASF paid "different wages to employees of opposite sex 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar conditions.'" *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 41 L.Ed.2d 1(1974) (quoting 29 U.S.C. § 206(d)(1)). The Sixth Circuit has since held that "equal work" requires *substantially equal* skill, effort, and responsibility. *Rabidue v. Osceola Refining Co.,* 805 F.2d 611, 623 (6th Cir.1986) (emphasis added).

In determining whether Miller's and Ashing's jobs required substantially equal skill, effort, and responsibility, it is the jobs and not the employees that are compared. *See EEOC v. City Council of City of Cleveland,* No. 88–3726, 1989 WL 54252, at *4–5 (6th Cir. May 24, 1989) (citations omitted). The Court must examine not job titles and classifications or the abilities of the persons performing the jobs, but the skills required by the comparable jobs. *See id.* (citations omitted). BASF disputes that Ashing can meet her prima facie burden pointing to evidence that Miller and Ashing did not perform "equal work." BASF maintains that Miller's work on the water based epoxy acrylic systems-the project BASF maintains is the "toughest project"—and with the Milford reactor differentiated his job from Ashing's. Moreover, BASF maintains that Ashing had safety responsibilities that Miller did not.

Ashing, as the nonmoving party, has the burden of putting forth specific facts to prove that there is a genuine issue of material fact for trial. Fed.R.Civ.P. 56(e).

Ashing's only proffered evidence that she and Miller performed equal work in their respective jobs is BASF's own statement to the EEOC that "Michael Miller is the only other similarly situated Senior Chemist in the Polymers group." It is not evident to the Court that if two employees are similarly situated for the purposes of a wrongful termination discrimination claim that then it automatically follows that the employees perform "equal work" for purposes of a EPA claim. The Court need not decide this question, however, because Ashing has not put forth any evidence opposing BASF's proffered justification for the unequal salaries.

Once a plaintiff has established a prima facie case of wage discrimination, the burden shifts to the employer to prove by a preponderance of the evidence that the salary difference is due to "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor than sex." 29 U.S.C. § 206(d)(1); *see also Timmer v. Michigan Dep't of Commerce,* 104 F.3d 833, 843 (6th Cir.1997). The employer's burden is a heavy one, *see Timmer,* 104 F.3d at 843, but BASF meets its burden here.

Even if the Court found that Miller and Ashing performed equal work, BASF provides justification for the salary differential. First, Miller was hired away from a competitor and received a starting salary at the market rate, a salary higher than Ashing was receiving. *See Smallwood v. Jefferson Cty, Ky.,* 95 F.3d 1153, No. 95–5686, 1996 WL 490353, at *8 (6th Cir.1996) (finding no EPA violation when the salary differential was needed to meet market conditions and hire a well-qualified candidate). Second, Miller received higher performance evaluations than Ashing. Ashing

*Plumbers & Steamfitters Joint Apprenticeship Committee,* 66 Ohio St.2d at 196, 421 N.E.2d 128. Further, analysis of claims is identical under the EPA and Title VII. *See Smallwood v. Jefferson Cty., Ky.,* 95 F.3d 1153, No. 95–

5686, 1996 WL 490353, at *8 (6th Cir.1996). Therefore, the Court will analyze the alleged unequal pay discrimination claim under R.C. Chapter 4112 under the EPA standards.

provides no probative evidence to the contrary on either point. "While under the [Equal Pay] Act the plaintiff is not required to prove pretext, she still must come forward with evidence demonstrating the existence of a triable issue of fact." *Timmer*, 104 F.3d at 844. Ashing has not come forward with such evidence, and therefore, Defendant's Motion for Summary Judgment on the wage discrimination claims is hereby **GRANTED.**

## IV. CONCLUSION

For the reasons discussed above, Plaintiffs have failed to produce significantly probative evidence on any one of their claims sufficient to defeat Defendant's Motion for Summary Judgment. Therefore, as to all counts, Defendant's Motion for Summary Judgment is hereby **GRANTED.**

**IT IS SO ORDERED.**