Mamie Annette RALLINS, Plaintiff,

v.

THE OHIO STATE UNIVERSITY, et al., Defendants.

No. C2–97–504.

United States District Court,
S.D. Ohio,
Eastern Division.

Jan. 25, 2002.

Mary Ellen Fairfield, Vorys Sater Seymour & Pease, Columbus, OH, Robert J Mulhern, Newark, DE, for defendant.

Elliot Tod Fishman, Fishman & Fey, Columbus, OH, for plaintiff.

### MEMORANDUM & ORDER

HOLSCHUH, District Judge.

Plaintiff Mamie Annette Rallins brought suit against her former employer, The Ohio State University, Andy Geiger in his official capacity, and Archie Griffin in his official capacity, alleging that she was subjected to gender discrimination during her tenure with the Athletic Department at The Ohio State University. All but two of Plaintiff's claims have been dismissed. (Record 13). In Plaintiff's remaining claims, she alleges violations of Title VII of the Civil Rights Act of 1964 ("Title VII"),

42 U.S.C. §§ 2000e *et seq.* and the Equal Pay Act, 29 U.S.C. § 206(d). This matter is currently before the Court on Defendant's motion for summary judgment. (Record 33).

## I. Background

Mamie Annette Rallins began working for The Ohio State University ("OSU" or "the University") in 1976 as the head coach for the women's cross-country, track and field team ("women's track team"). (Rallins Dep. at 12). Plaintiff is a two-time Olympian, who was on the United States Olympic Teams in 1964 and 1972. She established seven World Records and eleven American Records in hurdling and was named the number one hurdler in the world in 1969. (Ex. to Mem. Opp'n Mot. Summ. J., Rallins Aff. ¶ 4). Defendant Andy Geiger is the Assistant Vice President for Student Affairs and Director of Athletics for OSU. (Ex. A to Def.'s Mot. for Summ. J., Geiger Aff. ¶ 1). Defendant Archie Griffin is the Associate Director of Athletics at OSU. (Griffin Dep. at 5).

Plaintiff was required to coach and recruit for cross-country, track and field during all three seasons of the academic year because the cross-country season ran from September to November, indoor track and field ran from January to March, and outdoor track and field ran from March to June. (Rallins Aff. ¶ 7). As women's head track coach from 1976 to 1992–93, Plaintiff had total responsibility for coaching, training, conditioning, recruiting, budgeting, scholarships, scheduling, and the academic achievement of the student athletes. (Rallins Dep. at 25 and 27). During the years that Plaintiff worked for OSU, she reported to one of three Associate Athletic Directors: Phyllis Bailey, William Myles, and Archie Griffin.

In 1989, Russell Rogers was hired as the head coach of men's cross-country, track and field at OSU. (Rallins Aff. ¶ 14; Ex. B to Def.'s Mot. for Summ. J., Jones Aff. ¶ 3). The men's indoor track team, under the guidance of Mr. Rogers, finished second in the Big Ten Conference for the 1989–90 season. The men's outdoor track team finished second in the Big Ten Conference the following year and in 1991–92, the men's outdoor track team won the Big Ten Championship. (Ex. C to Def.'s Mot. for Summ. J., Henderson Aff. ¶ 3; Ex. 1 to Def.'s Mot. for Summ. J.). From 1989 to 1995, the men's track team at OSU was ranked in the top ten in the NCAA. (Henderson Aff. ¶ 4). Mr. Rogers was named Big Ten Coach of the Year in 1992 and 1993, and NCAA Division 1–A Coach of the Year in 1992. (*Id.*).

Since 1982, when the OSU women's track team joined the Big Ten Conference, Plaintiff has not coached any cross-country, indoor or outdoor track event to a Big Ten Championship. (*Id.* at ¶ 5). The women's track team has never ranked in the top ten in the NCAA, and Plaintiff has never been selected as the Big Ten or NCAA Division 1–A Coach of the Year. (*Id.*).

In the early 1990s, the Athletic Director and Associate Athletic Directors began discussing the benefits of combining the men and women's track teams at OSU. In 1993, James Jones, the Director of Athletics at that time, decided to combine the teams into one track program. (Ex. B to Def.'s Mot. for Summ. J., Jones Aff. ¶ 4). The purpose of this restructuring was to realize cost efficiencies by eliminating the need for duplication among the coaching staffs and to improve the track program for student athletes. (*Id.*; Ex. D to Def.'s Mot. for Summ. J., Myles Aff. ¶ 4).

In August of 1993, Mr. Rogers was selected to be overall head coach of the combined track program, with the title Men's Head Track Coach/Track Coordinator ("Track Coordinator"). (Myles Aff. ¶ 5). OSU contends that Rogers was se-

lected to be the overall head coach because of his strong recruiting abilities, the superior performance of the men's team, his coaching style, and the better relationships he had with the student athletes. (*Id.* at ¶ 7). Rather than discharge Plaintiff, OSU offered her the position of Women's Head Track Coach/Administrative Coordinator ("Administrative Coordinator") because she had strong organizational and administrative skills. (*Id.* at ¶ 8). After the restructuring, Plaintiff had less responsibility than Mr. Rogers and less responsibility than she previously had as women's head track coach. (*Id.* at ¶ 9).

After the reorganization, both Mr. Rogers and Ms. Rallins complained to Mr. Myles, the then Associate Athletic Director responsible for the track team, about their personal and professional difficulties working with one another. (*Id.* at ¶ 10). Mr. Myles met with both coaches individually to try to resolve the conflicts between them, but the efforts were not successful and the relationship between Plaintiff and Mr. Rogers continued to deteriorate. (*Id.*).

In May of 1994, Andy Geiger was named Athletic Director at OSU, and Archie Griffin replaced Mr. Myles as the Associate Athletic Director responsible for the track team. (Rallins Aff. ¶ 59). The situation between Plaintiff and Mr. Rogers had not improved, so Mr. Griffin set up a meeting on June 6, 1994 to discuss the problems that had been developing. (Ex. E to Def.'s Mot. for Summ. J., Griffin Aff. ¶ 3). At the meeting, Plaintiff and Mr. Rogers argued about their respective job duties. (*Id.*). Plaintiff became upset and left the room during the middle of the meeting, and did not return. (*Id.*). Plaintiff sent Mr. Griffin a memorandum later that day, which stated in part, "[a]s you can see that [sic] this present system is not and will not work." (Ex. E–1 to Def.'s Mot. for Summ. J.).

After Mr. Griffin received Plaintiff's June 6, 1994 memorandum, he recommended to Mr. Geiger that Plaintiff not be re-appointed as the Administrative Coordinator for 1994–95. (Griffin Aff. ¶ 5). Mr. Geiger accepted this recommendation and decided not to re-appoint Plaintiff. (Ex. A to Def.'s Mot. for Summ. J., Geiger Aff. ¶ 5). Mr. Griffin and Mr. Geiger allege that they relied upon the facts that "(1) Ms. Rallins herself indicated that she could not work with the Men's Head Coach/Track Coordinator, Mr. Rogers; and (2) the decision to appoint Mr. Rogers head coach of the overall program had already been made the previous year because of his superior performance and better relationships with the student athletes." (Griffin Aff. ¶ 5; Geiger Aff. ¶ 5).

In a letter dated June 28, 1994, Mr. Griffin notified Plaintiff that her contract with the Department of Athletics would not be renewed. (Rallins Dep. at 329). Plaintiff officially ended her employment with OSU on September 12, 1994. (*Id.* at 344).

In her First Amended Complaint, Plaintiff alleged the following causes of action: (1) discrimination and retaliation in violation of Title IX, 20 U.S.C. §§ 1681 *et seq.;* (2) discrimination and retaliation in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution; (3) sex discrimination in violation of Title VII, 42 U.S.C. §§ 2000e *et seq.;* (4) violations of the Equal Pay Act, 29 U.S.C. § 206(d); (5) violations of the Ohio Revised Code Chapter 4112; (6) intentional and negligent infliction of emotional distress; (7) wrongful discharge in violation of public policy; (8) breach of contract; and (9) a claim for injunctive relief. She seeks compensatory and punitive damages, payment of front and back pay, payment of liquidated damages, injunctive relief, interest, costs, attorney's fees, and such other relief as may be

deemed appropriate. (Record 12). The Court dismissed Plaintiff's claims in Counts One, Two, Five, Six, Seven, Eight, and Nine of the First Amended Complaint because the Court found that Plaintiff failed to state a claim or that the Court lacked subject matter jurisdiction for each of those claims. (Record 13). Plaintiff's only remaining claims are sex discrimination in violation of Title VII, 42 U.S.C. §§ 2000e *et seq.* (Count Three) and violations of the Equal Pay Act, 29 U.S.C. § 206(d) (Count Four).

## II. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides:

[Summary judgment] ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original); *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984).

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner,* 570 F.2d 107, 111 (6th Cir.1978). Therefore, summary judgment will be

granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is ... [and where] no genuine issue remains for trial, ... [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." *Poller v. Columbia Broadcasting Sys.,* 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) (quoting *Sartor v. Arkansas Natural Gas Corp.,* 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944)); *accord County of Oakland v. City of Berkley,* 742 F.2d 289, 297 (6th Cir.1984).

In making this inquiry, the standard to be applied by the Court mirrors the standard for what was formerly referred to as a directed verdict. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505.

The primary difference between the two motions is procedural; summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on the evidence that has been admitted." *Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 745, n. 11, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983). In essence, though, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

*Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505. Accordingly, although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

In a motion for summary judgment the moving party bears the "burden of show-

ing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (footnote omitted); *accord Adams v. Union Carbide Corp.,* 737 F.2d 1453, 1455–56 (6th Cir.), *cert. denied,* 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984). Inferences to be drawn from the underlying facts contained in such materials must also be considered in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Watkins v. Northwestern Ohio Tractor Pullers Ass'n,* 630 F.2d 1155, 1158 (6th Cir.1980). Additionally, "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. *Adickes,* 398 U.S. at 157–60, 90 S.Ct. 1598.

If the moving party meets its burden and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. Fed.R.Civ.P. 56(e).

### III. Discussion

#### A. Title VII Claims [1]

##### 1. Discriminatory Demotion Claim

Plaintiff alleges that she was discriminated against on the basis of gender in violation of Title VII when she was demoted to the position of Administrative Coordinator following the University's decision to combine the women and men's track teams into one program. Defendants argue that they are entitled to summary judgment on Plaintiff's claim of discriminatory demotion under Title VII because the claim is time-barred. In her response, Plaintiff does not address Defendants' argument that her discriminatory demotion claim is time-barred.[2]

Title VII includes time limit provisions for filing a discrimination charge with the EEOC prior to filing a suit in federal court. As a general rule, a discrimination charge must be filed with the EEOC within one hundred and eighty (180) days after the alleged unlawful employment practice occurred. *See* 42 U.S.C. § 2000e–5(e)(1).[3]

---

**1.** To the extent that Plaintiff claims that she was discriminated against on the basis of her sex in relation to the compensation she received, the Court will address that claim in section B regarding Plaintiff's pay discrimination claims.

**2.** In fact, Plaintiff's response does not address a claim of discriminatory demotion at all; Plaintiff only addresses her Title VII claim for discrimination based upon her termination from OSU.

**3.** With respect to the statute of limitations, the statute provides that:

However, if a complainant institutes proceedings with a state or local agency with authority to grant or seek relief from the practice charged, then the time limit for filing an EEOC charge is extended to three hundred (300) days. *See id.; EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 110, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988). The Ohio Civil Rights Commission ("OCRC") is the designated deferral agency in Ohio for the purposes of Title VII. *See* 29 C.F.R. § 1601.80.

The Supreme Court has held that the limitations period for filing an EEOC charge begins on the date that the alleged discriminatory decision was made and the plaintiff is notified, rather than at the time that the consequences of the alleged discriminatory act occurred. *See Delaware State College, et al. v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *Chardon et al. v. Fernandez et al.*, 454 U.S. 6, 8, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981). The limitations period therefore began on the date that the demotion was communicated to Ms. Rallins. Plaintiff was notified, at the latest, of the restructuring of the track program and of her new position as Administrative. Coordinator under the combined women and men's track program on August 4, 1993, when she reviewed the final draft of the track and field organizational chart. (Rallins Dep. at 219). Plaintiff was then notified on August 23, 1993 that the track program had officially been combined and that Mr. Rogers was officially the Track Coordinator. (Rallins Aff. ¶ 36). The statute of limitations for filing a charge of discrimination with the EEOC therefore began to run on August 23, 1993.

In order to have filed a timely charge with the EEOC, Plaintiff was required to file a claim within three hundred (300) days of the alleged unlawful event (here, the demotion).[4] *See* 42 U.S.C. § 2000e–5(e)(1). Because Ms. Rallins was officially notified of the demotion on August 23, 1993, Plaintiff was required to file an EEOC charge by June 19, 1994, in order for the charge to have been timely under the three hundred (300) day time limitation. Plaintiff filed a charge of discrimination with the OCRC and the EEOC on August 10, 1994. (Ex. 27 to Rallins Dep.). Although it is unclear whether Plaintiff is pursuing a claim of discriminatory demotion under Title VII since this claim is not even addressed in her response, the Court finds that a claim of discriminatory demotion is time-barred because Plaintiff did not file an EEOC charge within the three hundred (300) day time limitation pursuant to Title VII. Defendants are therefore entitled to summary judgment on Plaintiff's Title VII discriminatory demotion claim.

### 2. Discriminatory Discharge Claim

Plaintiff alleges that she was discharged from her position with the Athletic Department at OSU on account of her sex, in violation of Title VII, 42 U.S.C. §§ 2000e

---

A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred... except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier.... 42 U.S.C. § 2000e–5(e)(1).

4. Plaintiff filed a charge of discrimination with the OCRC, so the applicable time limitation for filing with the EEOC is three hundred (300) rather than one hundred and eighty (180) days. *See* 42 U.S.C. § 2000e–5(e)(1).

*et seq.* Title VII provides, in pertinent part:

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...

42 U.S.C. § 2000e-2(a).

■ In a case alleging employment discrimination in violation of Title VII, a plaintiff can withstand a motion for summary judgment either by presenting direct evidence of discrimination or by using the *McDonnell Douglas* framework set forth below to present circumstantial evidence from which a jury may infer a discriminatory motive. *See Kline v. Tennessee Valley Authority*, 128 F.3d 337, 348–49 (6th Cir.1997). Direct evidence "is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir.1999). Direct evidence

exists only where the unlawful discrimination is patent; it requires no inference of discrimination. *See Terbovitz v. Fiscal Court of Adair County*, 825 F.2d 111, 115 (6th Cir.1987).

■ Plaintiff first argues that an Athletic Salary Equity Committee Final Report issued by the University in 1992, which cites disparities between men and women's salaries in the Athletic Department, is direct evidence of discrimination. (Mem. Opp'n Mot. for Summ. J. at 4; Ex. A to Mem. Opp'n Mot. for Summ. J.). The Court finds that this report does not constitute direct evidence of discrimination. First, the report does not, in any way, indicate that Defendants had a discriminatory motive with respect to Defendants' actions regarding Plaintiff's employment. Second, the report analyzes potential salary disparities in 1992, and thus is not relevant to Defendants' decision not to reappoint Ms. Rallins to a position with the Athletic Department in 1994.

■ Plaintiff then cites a number of situations, in which she claims that OSU treated her differently than male employees, and which she argues are direct evidence of discrimination.[5] This evidence

---

5. Specifically, Plaintiff alleges that the University: (1) permitted a significant differential in Plaintiff's salary, as compared to male head coaches; (2) required Plaintiff to perform additional duties without additional pay, unlike male coaches; (3) prohibited Plaintiff from accompanying a world-record-setting athlete to a meet where the athlete set the world record, when her male counterpart was permitted to do so; (4) denied Plaintiff the same financial resources as those given to the men's track program; (5) acquiesced to Coach Rogers taking over the entire track and field program; (6) removed, or supported or acquiesced to Coach Rogers' removal of all of Plaintiff's duties in the women's program; (7) relegated Plaintiff to the duties of a clerical staff person; (8) refused or failed to correct Coach Rogers' inappropriate activities; (9) attacked or criticized Plaintiff as getting "too old" to coach, when she was approximately

the same age as other male coaches; (10) failed to provide the same clerical support to Plaintiff that it did for male coaches; (11) denied Plaintiff her position as track camp director in favor of Coach Rogers; (12) failed or refused to provide the same kind of accolades as it did to male coaches, when Plaintiff was named as an Olympic coach; (13) permitted Coach Rogers to deny Plaintiff access to student athletes, to prevent Plaintiff from performing the few duties assigned to her, to interfere with Plaintiff's duties and effectiveness, and to humiliate Plaintiff in front of others; (14) failed to take seriously Plaintiff's complaints about her hostile work environment and disparate treatment and gave credit only to the version told by Coach Rogers; and (15) terminated Plaintiff because she "could not get along" with Coach Rogers, without taking any action against Rogers. (Mem. Opp'n Mot. for Summ. J. at 4–6).

cited by Plaintiff, if believed, does not require the conclusion that unlawful discrimination was a motivating factor in the University's decision not to re-appoint Plaintiff to a position with the Athletic Department for the 1994–95 year. Even if the fact-finder were to believe all of Plaintiff's allegations, the fact-finder would nonetheless be required to make an inference of discrimination in order to determine that the University's action was motivated, at least in part, by unlawful discrimination. The Court therefore concludes that Plaintiff has presented no direct evidence of a discriminatory motive.

■ In cases like this, where the plaintiff has only circumstantial evidence of a discriminatory motive, claims are analyzed under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under that analysis, a plaintiff must first establish a prima facie case of discrimination. If the plaintiff is successful in doing so, an inference of discrimination arises and the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* at 802–03, 93 S.Ct. 1817. If the employer articulates such a reason, the plaintiff must then prove by a preponderance of the evidence that the reason offered was pretextual. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The plaintiff may prove pretext by showing either that: (1) the proffered reason had no basis in fact, (2) the proffered reason did not actually motivate the discharge, or (3) the proffered reason was insufficient to motivate the discharge.

*Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir.1994). The ultimate burden of persuading the trier of fact that the employer intentionally discriminated against her remains at all times with the plaintiff. *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089.

■ In order to establish a prima facie case of gender discrimination using circumstantial evidence, Ms. Rallins must establish the following by a preponderance of the evidence: (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) she was replaced by someone outside the protected class or was treated differently than similarly situated members of the unprotected class. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Warfield v. Lebanon Correctional Inst.*, 181 F.3d 723, 728–29 (6th Cir.1999).

There is no dispute that Ms. Rallins, as a woman, is a member of a protected class and that she suffered an adverse employment action. She was discharged from her position as Women's Head Track Coach/Administrative Coordinator. Plaintiff argues that she was qualified for the position, as evidenced by her personal and professional experience, and her 1993 performance evaluation. Defendants do not argue that Plaintiff was unqualified for the position. The first three elements of a prima facie case are therefore satisfied.

■ As to the fourth element, Plaintiff has not argued and the Court finds no evidence that she was replaced by someone outside the protected class when she was discharged from her position as Administrative Coordinator.[6] Plaintiff

6. With respect to the fourth element of her prima facie case, Plaintiff argues that she was replaced by Coach Rogers, who became the Track Coordinator when the men and women's track teams were combined into one program. (Mem. Opp'n Mot. for Summ. J. at 8). However, Plaintiff is referring to Coach Rog-

ers' position with the track team after Plaintiff's demotion when the teams were combined; Plaintiff does not claim that she was replaced by a male when she was discharged from her position as Administrative Coordinator.

must therefore establish that she was treated differently than similarly situated members of the unprotected class. In order for Plaintiff to show that she was similarly situated to those employees to whom she seeks to compare herself, she must show that all relevant aspects of her employment situation were nearly identical to theirs. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir.1998) (citing *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)). As to this fourth element, Plaintiff presents a long list of situations, in which she believes she was treated less favorably than male co-workers.[7] Plaintiff, however, has not presented any evidence to demonstrate that she was similarly situated to any of the male coaches or that she was treated differently for the same or similar conduct. In fact, Plaintiff fails to even allege that any aspects of her employment situation were nearly identical to those of the male coaches to whom she compares herself.

Because Plaintiff has failed to present sufficient evidence from which a reasonable jury could find that she was treated less favorably than similarly situated male employees or that she was replaced by someone outside the protected class, she has failed to establish a prima facie case of employment discrimination on the basis of gender. The Court need not determine whether the University articulated a legitimate, non-discriminatory reason for the discharge or whether Plaintiff has shown that the reason offered was pretextual because the Court has already determined that Plaintiff failed to establish a prima facie case of gender discrimination. Defendants are therefore entitled to summary judgment on Plaintiff's claim of discriminatory discharge under Title VII.

## B. Pay Discrimination Claims

### 1. Equal Pay Act Claim

In Count 4 of her Amended Complaint, Plaintiff alleges that Defendants violated the Equal Pay Act, 29 U.S.C. § 206(d),[8] by

---

7. Plaintiff supports her allegation of disparate treatment with the same evidence that she alleges constitutes direct evidence of discrimination. Specifically, Plaintiff claims that the University: (1) permitted a significant differential in Plaintiff's salary, as compared to male head coaches; (2) required Plaintiff to perform additional duties without additional pay, unlike *male coaches; (3) prohibited Plaintiff from accompanying a world-record-setting athlete to a meet where the athlete set the world record, when her male counterpart was permitted to do so; (4) denied Plaintiff the same financial resources as those given to the men's track program; (5) acquiesced to Coach Rogers taking over the entire track and field program; (6) removed, or supported or acquiesced to Coach Rogers' removal of all of Plaintiff's duties in the women's program; (7) relegated Plaintiff to the duties of a clerical staff person; (8) refused or failed to correct Coach Rogers' inappropriate activities; (9) attacked or criticized Plaintiff as getting "too old" to coach, when she was approximately the same age as other male coaches; (10) failed to provide the same clerical support to Plaintiff that it did for male coaches; (11)

denied Plaintiff her position as track camp director in favor of Coach Rogers; (12) failed or refused to provide the same kind of accolades as it did to male coaches, when Plaintiff was named as an Olympic coach; (13) permitted Coach Rogers to deny Plaintiff access to student athletes, to prevent Plaintiff from performing the few duties assigned to her, to interfere with Plaintiff's duties and effectiveness, and to humiliate Plaintiff in front of others; (14) failed to take seriously Plaintiff's complaints about her hostile work environment and disparate treatment and gave credit only to the version told by Coach Rogers; and (15) terminated Plaintiff because she "could not get along" with Coach Rogers, without taking any action against Rogers. (Mem. Opp'n Mot. for Summ. J. at 8–10).

8. The Equal Pay Act provides that:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a

paying wages to Ms. Rallins that were substantially disparate to those paid to comparable male coaches at OSU. The statute of limitations applicable to Equal Pay Act claims states that:

> [A cause of action] may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued...

29 U.S.C. § 255(a). Plaintiff does not argue that a willful violation occurred, so the two-year statute of limitations applies in this case.

 A cause of action under the Equal Pay Act is deemed to accrue "at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed." *Halferty v. Pulse Drug Co., Inc.*, 821 F.2d 261, 271 (5th Cir.1987), *modified on other grounds*, 826 F.2d 2 (5th Cir.1987). Plaintiff's last day of employment with OSU was on September 12, 1994. (Rallins Dep. at 334; Ex. 26 to Rallins Dep.). The cause of action therefore accrued at the regular payday immediately following September 12, 1994, and Plaintiff had two years from that date to commence a cause of action within the statute of limitations.

An action is commenced for purposes of § 255 on the date that the complaint is filed, with certain exceptions that are not applicable here. 29 U.S.C. § 256. In this case, Plaintiff filed her Complaint on April 28, 1997 (Record 1), which is over two years and seven months after her last day of employment with the University. Although the parties did not provide the Court with the date of Plaintiff's last regular payday immediately following her last day of employment on September 12, 1994, the action was certainly not commenced within two years of that date. Furthermore, Plaintiff does not refute Defendants' argument that her Equal Pay Act claim is time-barred. Defendants are therefore entitled to summary judgment on Plaintiff's claim under the Equal Pay Act because this claim was filed beyond the applicable statute of limitations.

**2. Pay Discrimination Under Title VII**

In Count 3 of her Amended Complaint, Plaintiff alleges that Defendants discriminated against her on the basis of sex in violation of Title VII, 42 U.S.C. §§ 2000e, *et seq.* Title VII provides in pertinent part that "[i]t shall be an unlawful employment practice for an employer...to discriminate against any individual with respect to compensation...because of such individual's...sex...." 42 U.S.C. § 2000e–2(a)(1). To the extent that Plaintiff is pursuing a claim of pay discrimination under Title VII, the Court will address that claim, although Plaintiff does not address this claim in her response.

 The analysis of a claim of unequal pay for equal work is essentially the same under both Title VII and the Equal Pay Act. *See Odomes v. Nucare, Inc.*, 653 F.2d 246, 250 (6th Cir.1981). In order to establish a prima facie case of unequal pay

---

rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (I) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex....

29 U.S.C. § 206(d)(1).

for equal work under Title VII, Plaintiff must prove that the University paid "different wages to employees of opposite sexes 'for equal work on jobs the performance of which require equal skill, effort and responsibility, and which are performed under similar working conditions.'" *Id.* (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974)). Once Plaintiff has established a prima facie case, "the burden shifts to the employer to show that the differential is justified under one of the [Equal Pay] Act's four exceptions."[9] *Corning Glass*, 417 U.S. at 196, 94 S.Ct. 2223.

 In establishing a prima facie case, Plaintiff must show that different wages were paid to male employees who performed substantially equal work requiring substantially equal skill, effort, and responsibility. *See Rabidue v. Osceola Refining Co.*, 805 F.2d 611, 623 (6th Cir. 1986); *Henry v. Lennox Indus., Inc.*, 768 F.2d 746, 752 (6th Cir.1985). In making this comparison, it is the jobs and not the employees that are compared. *See Brune v. BASF Corp.*, 41 F.Supp.2d 768, 778 (S.D.Ohio 1999). The question of whether two jobs are substantially equal must be decided on a case-by-case basis. *See Hein v. Oregon College of Educ.*, 718 F.2d 910, 913 (9th Cir.1983).

In order to establish her prima facie case, Plaintiff first points to a 1992 Athletic Salary Committee Final Report. (Mem. Opp'n Mot. for Summ. J. at 2 n. 1). This report cites disparities between the salaries of men and women in the Athletic Department in 1992. (Ex. A to Mem. Opp'n Mot. for Summ. J.). Plaintiff also argues that her affidavit provides evidence

of salary disparities within the Athletic Department. In particular, Ms. Rallins testified that her salary in 1976 was "considerably lower than most of the male Head Coaches for the same time period, with fewer seasons to coach." (Rallins Aff. ¶ 8). Plaintiff also alleges that when Coach Rogers was hired as the men's head track coach in 1989, his salary was more than $5000 higher than Plaintiff's salary for that same year. (Rallins Aff. ¶ 14).

Defendants argue that Plaintiff cannot establish a prima facie case of pay discrimination during the limitation period in which Plaintiff could bring such a claim under Title VII. As the Court has already stated, a plaintiff asserting claims under Title VII must comply with the time limit provisions for filing a discrimination charge with the EEOC. The statute provides that if a complainant institutes proceedings with a state or local agency with authority to grant or seek relief from the practice charged (the OCRC in Ohio), then the time limit for filing a charge of discrimination with the EEOC is three hundred (300) days. *See* 42 U.S.C. § 2000e–5(e)(1). In this case, Plaintiff filed a charge of discrimination with the OCRC and the EEOC on August 10, 1994. (Ex. 27 to Rallins Dep.). Thus, Plaintiff must establish a prima facie case of unequal pay during the three hundred (300) days prior to the filing of the OCRC/EEOC charge on August 10, 1994. The three hundred day period would have begun on October 14, 1993.

 Plaintiff's only position with the Athletic Department during this three hundred (300) day limitation period was that of Women's Head Track Coach/Ad-

**9.** The four exceptions enumerated in the Equal Pay Act are also applicable to Title VII claims of unequal pay for equal work. *See Odomes*, 653 F.2d at 251. Those exceptions include payment made pursuant to "(i) a se-

niority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex...." 29 U.S.C. § 206(d)(1).

ministrative Coordinator. Plaintiff has not established that her job as Administrative Coordinator was substantially equal to the job of any male employee of the Athletic Department at OSU. In fact, Plaintiff testified that there was no one at the University who was performing substantially the same job as Plaintiff during the 1993–94 time period. (Rallins Dep. at 347). Under these circumstances, Plaintiff has failed to produce sufficient evidence to demonstrate a prima facie case of pay discrimination under Title VII.

Even assuming *arguendo* that Plaintiff's claim relating to alleged pay disparities in 1976, 1989, and 1992 was not time-barred, the evidence presented by Plaintiff is insufficient to support a prima facie case of pay discrimination under Title VII. The Athletic Salary Committee Final Report to which Plaintiff refers does not demonstrate that the University paid Ms. Rallins a different salary than the salary paid to any male employee who performed substantially equal work. The report is therefore insufficient to establish a prima facie case of pay discrimination. Plaintiff's conclusory, unsupported allegations that she was paid less than other male coaches at OSU or Coach Rogers are likewise insufficient to establish a claim for pay discrimination because Plaintiff failed to demonstrate that she performed substantially equal work as the male coaches to whom she seeks to compare herself. Defendants are therefore entitled to summary judgment on Plaintiff's claim of pay discrimination under Title VII.

## IV. Conclusion

For the reasons discussed above, the Court hereby **GRANTS** Defendants' motion for summary judgment. (Record 33). All of Plaintiff's other claims have been dismissed (Record 13), so the Court enters **JUDGMENT** in favor of Defendants.

IT IS SO ORDERED.